FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2002 AUG 22  P 3: 42

TIG PREMIER INSURANCE GROUP      :

                                  :
          v.                      :     Civil Action WMN-01-CV-2841
                                  :
HEACO, INC., et al.               :

## MEMORANDUM

Before the court is Defendants' Joint Motion to Dismiss for
Lack of Personal Jurisdiction.[1]  Paper No. 8.  The motion is ripe
for decision.  Upon review of the motion and the applicable case
law, the court finds that no hearing is necessary (Local Rule
105.6) and that the motion will be denied.

## I.  FACTS

Plaintiff, a Texas corporation, brings this suit against
Defendant Heaco, a defunct Delaware corporation, and individual
Defendants Winifred L. Heacock and Frank Heacock.[2]  Plaintiff
seeks to recover money damages from Defendants based upon an
indemnity agreement.  The agreement was signed by Plaintiff, by

---

[1] Also before the Court is Defendants' Motion to Strike Affidavit
of Susan Hall.  Paper No. 14.  Because the Court finds
jurisdiction over Defendants based on evidence other than that
contained in the contested affidavit, this motion will be denied
as moot.

[2] Winifred L. Heacock and Frank Heacock were the sole officers
and stockholders in Heaco.  Winifred L. Heacock controlled 51% of
the corporation, while her husband, Frank Heacock, controlled
49%.  Pl.'s Exh. 12 at 170.

Winifred L. Heacock and Frank Heacock as individual indemnitors, and by Winifred L. Heacock as President and Frank Heacock as Vice-President for Heaco, Inc. The indemnity agreement was itself related to a school construction project in Cecil County, Maryland, for which Heaco was hired as a subcontractor.[3]  Heaco was to provide "mechanical work," including the installation of plumbing, ventilation, and duct work in the school building.  The duration of the construction subcontract was to be 2 years and its value was $1,620,000.

As a condition precedent to the award of the subcontract, Defendants were required to provide: a performance bond for the completion of the construction; a payment bond for any damages sustained by the contractor for a failure to perform on the part of Heaco; and, a personal guarantee from a corporate officer of Heaco.  To fulfill the performance and payment bond requirements, Defendants contacted Plaintiff.  Plaintiff agreed to issue bonds on behalf of Defendants pursuant to the terms of the indemnity agreement.  Plaintiff then issued the bonds, and the subcontract was awarded to Heaco by the project's main contractor.  The subcontract was signed by Winifred L. Heacock in her capacity as

---

[3] The main contractor on the project was James W. Ancel, Inc., a Maryland Corporation.

2

president of Heaco, in October, 1995.

In 1996, the contractor defaulted Heaco for a failure to perform. The contractor then demanded payment from Plaintiff on the performance and payment bonds Plaintiff issued for the project on behalf of Defendants. After conducting an investigation, Plaintiff made payments of $400,000 to the contractor and other parties damaged by Heaco's default, and incurred costs of $100,000 in fulfilling the terms of the bonding agreements. Plaintiff seeks to recover these payments and expenses from Defendants in this suit.

As a preliminary matter, Defendants claim that Heaco is not subject to suit because it was administratively dissolved in 2001. This claim is without merit. Although Heaco ceased to exist as a corporate entity in 2001, Delaware state law specifies that Delaware corporations may be sued up to three years after they have been dissolved. Del. Code Ann. tit. 8, § 278. Since Heaco was dissolved in 2001, less than 3 years before suit was filed, it is an entity subject to suit.

The central argument in Defendants' motion is that they are not subject to the personal jurisdiction of this Court.

3

## II.  **STANDARD FOR PERSONAL JURISDICTION**

Where jurisdiction over a defendant is contested, the plaintiff bears the burden of establishing the existence of jurisdiction based on a preponderance of the evidence.  Choice Hotels Int'l, Inc. v. Madison, 23 F.Supp.2d 617, 619 (D. Md. 1998).  In deciding jurisdictional questions, all relevant evidence must be construed in favor of the plaintiff.  Combs v. Baker, 886 F.2d 673 (4th Cir. 1989); see also, Owens-Illinois, Inc. v. Rapid America Corp., 124 F.3d 619, 628 (4th Cir. 1997).

A plaintiff seeking to establish personal jurisdiction over a non-resident defendant in Maryland must show: 1) that the Maryland long-arm statute authorizes service of process outside the state;[4] and 2) that service on the defendant comports with

---

[4] Plaintiff asserts jurisdiction over Defendants pursuant to subsections (b)(1), (b)(2) and (b)(3) of Maryland's long arm statute:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
> (b) A court may exercise personal jurisdiction over a person, who directly or indirectly or by an agent:
> (1) Transacts any business or performs any character of work or service in the state;
> (2) Contracts to supply goods, food, services, or manufactured products in the State; [or]

4

the requirements of the due process clause of the Fourteenth
Amendment of the United States Constitution.  Mylan Laboratories,
Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  Maryland
courts have held that the state's long-arm statute represents "an
effort by the legislature to expand the boundaries of in personam
jurisdiction to the limits permitted by the Federal
Constitution."  Geelhoed v. Jensen, 277 Md. 220, 224 (1975);
Camelback Ski Corp. v. Behning, 307 Md. 270 (1986).
Consequently, the statutory and constitutional interpretations of
the limitations on jurisdiction essentially merge.  Stover v.
O'Connell Associates, 84 F.3d 132, 135-36 (4th Cir. 1996); Choice
Hotels Int'l, 23 F.Supp.2d 617.[5]

    The underlying constitutional question for any

_____

> (3) Contracts to insure or act as a
> surety for, or on, any person, property,
> risk, contract, obligation, or agreement
> located, executed, or to be performed within
> the State at the time the contract is made,
> unless the parties otherwise provide in
> writing.

Md. Code Ann., Cts. & Jud. Proc. Art., § 6-103.

[5] The Stover court questioned whether all sections of the
Maryland long-arm statute extended to the limits of due process.
See, Stover, 84 F.3d at 135 n. *.  However, the constitutional
issues raised in Stover were based on a section of the statute
not at issue in the present case.  See also, Craig v. General
Fin. Corp., 504 F.Supp. 1033 (D. Md. 1980).

jurisdictional analysis is whether the defendant had sufficient "minimum contacts" upon which a finding of jurisdiction may be reasonably founded. International Shoe v. Washington, 326 U.S. 310, 316 (1945). The Supreme Court has held that minimum contacts exist when parties "reach out beyond one state and create continuing relationships and obligations with citizens of another state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). The Court further held that where a defendant has "deliberately" undertaken "significant activities," or has a "substantial connection" with the forum in question, it is "presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Id. at 475. See also, World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980)(holding that due process requires that a jurisdictional finding must be based, in part, on a defendant's purposeful availment of the forum).

Within this constitutional framework, courts may exercise jurisdiction over a defendant through either "specific jurisdiction" or "general jurisdiction." See, Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Burger King, 471 U.S. at 473, n. 15; Choice Hotels, Int'l. 23 F. Supp. 2d at 619. The "essential foundation" of specific

6

jurisdiction is a "relationship among the defendant, the forum, and the litigation," Helicopteros, 466 U.S. at 414, and is based on a "tri-partite showing that: (1) the non-forum defendant purposefully directed its activities toward the forum state or purposefully availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and, (3) the forum's exercise of personal jurisdiction in the case is reasonable, i.e., is consistent with fair play and substantial justice." Choice Hotels, 23 F.Supp.2d at 620.

Courts may find general jurisdiction over a defendant if a defendant has undertaken "continuous and systematic" contacts with the forum state. Helicopteros, 466 U.S. at 415. Such contacts between the defendant and the forum must be "fairly extensive" before the burden of defending a suit there may be imposed upon it "without offending the traditional notions of fair play and substantial justice." Goodyear Tire v. Ruby, 312 Md. 413, 423 (1988).

**III. DISCUSSION**

The record indicates that Heaco and the Heacocks made a deliberate decision to establish substantial connections with this forum through multiple business contacts spanning more than

7

a decade. Plaintiff has shown, by a preponderance of the
evidence, that Defendants' contacts with Maryland more than
exceed the minimum contacts required for this court to exercise
jurisdiction over Defendants. For the reasons that follow, the
Court finds that Plaintiff has established both specific and
general jurisdiction over Defendant Heaco, as well as, at a
minimum, specific jurisdiction over the Heacocks.

A. Defendant Heaco

In challenging specific jurisdiction over Defendant Heaco,
Defendants argue that the instant cause of action based on the
indemnification agreement "does not arise out of any Maryland
related context." Motion at 5. This argument is unpersuasive
and somewhat disingenuous. The purpose of the indemnification
agreement between Plaintiff and Defendants was to facilitate a
construction project located within the state of Maryland.
Indeed, the acquisition of the performance and payment bonds
provided by Plaintiff was a condition precedent to the award of
the construction subcontract to Heaco. If Heaco had not obtained
bonds from Plaintiff, Heaco would not have been awarded the
subcontract in Maryland. And, if Heaco had not been defaulted on
the Maryland-based construction project, Plaintiff would not have
sustained damages through bond payments to the contractor and

8

sub-subcontractors (almost all of which were Maryland

corporations) damaged by Heaco's default. Defendants' assertion

therefore, that the indemnification agreement did not "arise out

of any Maryland related context," is demonstrably false.

Additionally, the contracts that form the underlying basis

for the instant dispute -- the subcontract between Heaco and the

contractor, and the performance and payment bond agreement

between Plaintiff and Defendants -- all contain forum selection

clauses mandating that any suit arising out of the agreements

will be subject to the laws of the state of Maryland.[6]  Pl.'s.

Exh. 3.  The subcontract was signed by Winifred L. Heacock,

individually and as president of Heaco, on October 13, 1995.  Id.

The performance and payment bond agreement, signed by Plaintiff

and Heaco, in addition to its own forum selection clause,

incorporates the subcontract into its provisions by reference.[7]

_____

[6] The subcontract provides, in part, that "[t]his Subcontract shall be governed by the laws of the State where the Contractor has its principal office and any actions or lawsuits brought hereunder to the extent permitted by law shall be brought in the District where Contractor's principal office is located. . .."  Pl's. Opp., Exh. 3.  The principal office for the contractor on the school construction project is located in Towson, Md.  Id.

[7] The bond agreement contains a provision stating "[n]o action shall be commenced hereunder by any claimant . . . other than in. . . the United States District Court in which the project, or any part thereof, is situated, and not elsewhere."  Pl's. Opp., Exh. 6.  As has been noted, the entire project that is the basis for

9

Pl.'s Exh. 6.  The bond payment agreement was signed by Winifred
L. Heacock, as an individual and on behalf of Heaco, on November
9, 1995.  Id.  The performance and payment bond agreement was
issued as a direct result and solely because of the
indemnification agreement between Plaintiff and Defendants.  When
the above evidence is examined in the light most favorable to
Plaintiff, it undoubtably supports a finding specific
jurisdiction over Heaco.

Plaintiffs have also urged, and the Court agrees, that
the assertion of general jurisdiction over Defendant Heaco would
be proper.  In addition to the construction subcontract and the
resultant forum-related activities undertaken on the part of the
Heacocks and Heaco, Plaintiff cites additional "systematic and
continuous," contacts between Heaco and the state of Maryland,
upon which this Court could base a finding of general
jurisdiction.

Between June, 1994, and November, 1996, Heaco provided
equipment rentals for a local golf club on multiple occasions.
See, Complaint in Heaco, Inc. v. Horsham Valley Golf Assoc.,
Inc., Case # 07-C-97-000183 (Balt. Co. Cir. Ct.), at ¶ 4, Pl.'s
Exh. 17.  During 1994 and 1995, Heaco provided mechanical and

_____

the instant action is located in Cecil County, Maryland.

10

plumbing services for this same club. Id. Plaintiffs also
point to evidence that Heaco worked for the Maryland Dept. of
Transportation in 1994. Pl.'s Exh. 18. Moreover, Defendants'
own testimony indicates that they were involved in a project in
the state of Maryland "about every other year or so" for the 13
years Heaco was in business. Dep. of Winifred Heacock in Heaco,
Inc. v. James W. Ancel, Inc., Case # 3-C-96-008194 (Balt. Co.
Cir. Ct.), at 175, Pl.'s Exh. 11.

Additionally, Heaco was registered to do business in the
state of Maryland between 1988 and 2000, and appointed a resident
agent in Maryland. Pl.'s Exh. 1. Heaco has claimed in court
filings in other proceedings that it is a Maryland state-
certified "Minority Owned Business." Complaint in Heaco v. Ancel
at ¶ 1, Pl.'s Exh. 2. Tax records indicate that Heaco paid taxes
in the state of Maryland in 1995. Pl.'s Exh. 19. And, on at
least two separate occasions, the Heacocks, acting as corporate
officers of Heaco, availed themselves of the use of the courts in
the state of Maryland, and filed suits to protect Heaco's
substantial and extensive business interests within the state.
Heaco v. Ancel and Heaco v. Horsham Valley Golf, supra. These
long-standing and systematic contacts between Heaco and Maryland,
especially when viewed in conjunction with the school

11

construction project that is the basis of the instant action, are
extensive enough for the Court to find general jurisdiction over
Heaco without offending notions of fair play and substantial
justice.

In response to Plaintiff's evidence, Defendants offer
confused and conclusory statements about the nature and extent of
their contacts with Maryland. Defendants provide inconsistent
statements as to the number of contacts Heaco had in Maryland.
In Defendants' Joint Motion to Dismiss, Defendants claim
participation in only "two" Maryland-related projects. Id. at 3.
In response to Plaintiff's allegations regarding the Defendants'
extensive, substantial, and continuous contacts with Maryland,
however, Defendants restate the amount of work they have
undertaken in Maryland as a "few projects." Reply at 4.
Furthermore, while Defendants devote considerable discussion to
the Heacocks' alleged residency in the state of Florida - a claim
disputed by Plaintiff - Defendants do nothing to refute the other
substantial contacts between Heaco and Maryland, on which
Plaintiffs base their assertion of jurisdiction. Accordingly,
the Court finds that general jurisdiction over Heaco would be
proper, even if specific jurisdiction were not also established.

12

B. Winifred and Frank Heacock

The Court finds that there is, at minimum, specific jurisdiction over the Heacocks as well. Winifred and Frank Heacock, in signing as individual guarantors of the indemnity agreement with Plaintiff, subjected themselves as individuals to the jurisdiction of this Court. The individual indemnification agreement is an example of a purposeful, forum-directed activity on the part of the Heacocks. The fact that the agreement was signed by a Delaware Corporation (Heaco), Florida residents (as the Heacocks claim to be) and a Texas corporation (Plaintiff) does not obscure the fact that the sole reason for the indemnity agreement between Plaintiff and Defendants was a construction subcontract in Cecil County, Maryland. Based on the substantial nature of this contact between the Heacocks and the state of Maryland, and the fact that the instant controversy arises out of this purposeful contact, specific jurisdiction over the Heacocks is proper.

In reaching this conclusion, the Court is guided by a previous decision of this Court in Graybar Electric Co., Inc. v. Environmental Safety Consultants, Inc., Civ. Action No. 97-321

(D. Md. Aug. 14, 1997).[8]  In Graybar, this Court held that a
guaranty agreement, when insuring a contract that is to take
place within the forum state in question, was enough to establish
in personam jurisdiction over defendants.  The Court notes that,
in Graybar, only a portion of the guaranteed construction
contract was to take place in the state of Maryland.  In
contrast, the case for jurisdiction in the instant action is much
stronger, as the entire subcontract which provides the underlying
basis for the current dispute would have been performed in
Maryland.[9]

_____

[8] Defendants challenge Plaintiff's citation of the "unpublished
Memorandum Opinion" in Graybar by arguing that "F.R.A.P. Local
Rule 36(c), although dealing with unpublished appellate opinions,
implies that citations to unpublished dispositions in the
district court should be disfavored."  Paper No. 15 at 6.  Unlike
Fourth Circuit appellate decisions, no district court decision is
binding on a district court, it is merely persuasive authority.
That a decision is published or unpublished, does not alter its
persuasiveness.

[9] Defendants urge the Court, instead, to follow Diebold, Inc. v.
Firstcard Financial Services, 104 F.Supp. 758, (N.D. Ohio 2000).
The Diebold court held that "simply signing a guaranty or a
surety agreement, without more, does not give rise to transacting
any business," for the purposes of jurisdiction.  Id. at 762.  In
the present case however, there was much "more" than the mere
signing of a guaranty agreement.  The indemnity agreement was
personally signed by the Heacocks for the purposes of obtaining a
construction subcontract located solely within the state of
Maryland.  The Defendants' default, for which Plaintiff seeks to
recover, was completely based on this subcontract.  Plaintiff
seeks damages that were paid on behalf of Heaco and the Heacocks
almost exclusively to Maryland businesses, or expended in

14

## IV.  CONCLUSION

Based on the above discussion, the Court finds both general

and specific jurisdiction over Defendant Heaco, and at the least,

specific jurisdiction over Defendants Winifred L. Heacock and

Frank Heacock.  Accordingly, Defendants' Joint Motion to Dismiss

will be denied.  A separate order will issue.

William M. Nickerson
Senior United States District Judge

Dated: August 22, 2002

---

investigating Defendants' default on the Maryland-based
construction project.  In <u>Diebold</u>, the underlying contract had
nothing to do with the forum state.  Suit was filed in Ohio, but
the guaranty and surety agreement related to a contract for ATM
machines to be supplied in several Western states.