# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

TIG PREMIER INSURANCE COMPANY    *

     Plaintiff                 *

v.                                *       Civil No.: WMN-01-2841

HEACO, INC., et al.           *

     Defendants         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO ENFORCE SETTLEMENT

Plaintiff, TIG Premier Insurance Company ("TIG"), by John V. Church, Michael A. Stover and Whiteford, Taylor & Preston, LLP, hereby submits this Memorandum of Law in Support of its Motion to Enforce Settlement as a result of the Defendants failure to consummate the settlement reached in this matter:

### I.       INTRODUCTION

On February 3, 2004, the parties participated in a settlement conference with Magistrate Judge Bredar. At that conference, the parties reached a settlement. The terms of the settlement were that the Defendants would pay the agreed upon settlement amount of $172,500.00 in exchange for dismissal of the case and a full release. The Defendants were given 90 days to pay the settlement amount. The Defendants have failed to pay the settlement amount. Accordingly, this motion to enforce the settlement is being filed as a result of the Defendants' failure to consummate the settlement.

## II.    FACTUAL BACKGROUND

This case arises out of a construction project located in Cecil County, Maryland, known as the Renovation of Rising Sun Middle School (hereinafter the "Project"), Job No. JWA #95-2.  Defendant, Heaco was a subcontractor on the Project.  As a condition of being awarded the Subcontract, the general contractor required that Heaco provide a performance bond and a payment bond.  At Heaco's request, TIG agreed to and in fact did issue the bonds required for the Project.  In exchange, TIG required that the Defendants, Frank and Winifred Heacock, individually and on behalf of Heaco, execute a General Indemnity Agreement (hereinafter the "Indemnity Agreement").  The Indemnity Agreement is a standard surety industry agreement required to insure that TIG would be made whole for any losses it incurs as a result of claims made on bonds it issues.

In 1996, as a result of Heaco's failure to properly perform its contractual obligations under the Subcontract, the general contractor defaulted Heaco and terminated its subcontract.  Demand was made by the general contractor upon TIG under the Performance Bond to remedy the default.  Furthermore, numerous additional claims were asserted against the payment bond by Heaco's unpaid sub-subcontractors.  TIG's total loss under the bonds for the Project was approximately $500,000.00.  As a result of the losses sustained, TIG instituted this action against the Defendants.

On June 24, 2003, this Court referred this matter to Magistrate Judge Bredar for purposes of conducting a settlement conference.  On February 3, 2004, the parties participated in a settlement conference with Magistrate Judge Bredar in his chambers at

which time a settlement was entered into by the parties.  *See* Affidavit of Michael A. Stover attached hereto as **Exhibit 1**.  The settlement conference was attended by Ms. Winifred Heacock, one of the individual Defendants and President of Defendant, Heaco, Inc. on behalf of herself, Heaco, Inc. and Frank Heacock, her husband.  Id. at ¶3. The conference was also attended by a representative of TIG.  Id.

At the settlement conference there were a series of back and forth discussions and negotiations with Judge Bredar and the parties.  Id. at ¶4.  After several hours, Judge Bredar prepared a hand written settlement proposal containing the terms that he believed the parties would agree to based upon the discussions he had with the parties during the course of the conference.  Id.  The identical written settlement proposal was placed before each side with the simple option of accepting or rejecting the settlement proposal.  Id. at ¶5.  The Proposal read as follows:

1. Def.s agree to pay plaintiff $172,500.00.  Full payment due in 90 days.  No structure.
2. Plaintiff agrees to grant defendants a full and complete release.  This is a global settlement resolving all claims between and among the parties to the lawsuit.
3. Each party will pay its own fees and costs, including attorney fees.

The proposal was accepted by TIG and the Defendants.  Id. at ¶6.  A copy of the proposals bearing the signature of the Defendants' attorney, Vincent Vacarella, and Winifred Heacock and counsel for TIG are attached hereto as **Exhibit 2**.  The parties shook hands and congratulated each other on reaching a resolution of the case.  *See* Exhibit 1 at ¶8.  Judge Bredar congratulated the parties and advised that he would

inform the Court that a settlement had been reached and he further advised that a Settlement Order would be issued.  Id.  As a result of the settlement, the case was removed from the trial docket.

The terms of the settlement are simple - the Defendants agreed to pay $172,500.00 within 90 days to TIG and TIG agreed to fully release the Defendants.  The scope of the settlement was stated to be "global" and "resolving all claims."  There was an offer, consideration and acceptance.  There were no contingencies or conditions precedent.

As a result of reaching the settlement, on February 3, 2004, the Court issued a Settlement Order pursuant to Local Rule 111.[1]  The Settlement Order provided that the case was dismissed subject to being reopened within 95 days if the settlement was not consummated.  In April 2004, counsel for the Defendants called counsel for the Plaintiff advising that the Defendants were having trouble raising the settlement funds and requesting further time to make the payment.  See Exhibit 1 at ¶12.  No extension of time was agreed to by TIG.  Id.  The 90 day payment period under the terms of the settlement expired on Monday, May 3, 2004 and payment of the settlement funds has not been received as of the date of this Motion.  Id. at ¶11.  The Defendants do not contend that the settlement was not valid or that they were not required to pay the agreed upon settlement amount.  Id. at ¶13.  Accordingly, on May 5, 2004, within the 95 day period of the Settlement Order, Plaintiff moved to reopen the case because the settlement amount had not been paid by the Defendants.

---

[1]  The Settlement Order was entered on the docket on February 4, 2004.

On June 16, 2004, this Court entered an Order finding that good cause had been shown and ordering that the case be reopened. At a telephone conference held with the parties and the Court on June 29, 2004, TIG advised the Court that this motion would be filed.

## III.    ARGUMENT

The Defendants have failed to pay the required settlement funds within the agreed upon time period. Payment of the settlement funds is a fundamental and material part of the settlement. The failure to pay is a clear and material breach of the settlement agreement and operates to completely frustrate the purpose and reason for the settlement. Accordingly, this Court should grant the motion and enter an order enforcing the settlement and requiring that the payment be made.

Settlements are favored by the Courts. *See e.g.*Zimmerman v. Bell, 800 F.2d 386, 392 (4th Cir. 1986); Vaughns v. Board Of Education Of Prince George's County, 18 F. Supp. 2d 569, 578 (D.Md. 1998); Williams v. First National Bank, 216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910); Attman/Glazer P.B. Company v. Mayor And Aldermen Of Annapolis, 314 Md. 675, 688-689 (1989); General Motors Corp. v. Lahocki, 286 Md. 714, 726, 410 A.2d 1039 (1980); Chertkof v. Harry C. Weiskittel Co., 251 Md. 544, 550, 248 A.2d 373 (1968), *cert. denied*, 394 U.S. 974, 89 S.Ct. 1467, 22 L.Ed.2d 754 (1969).

This Court in Mungin v. Calmar Steamship Corporation, 342 F. Supp. 484, 485 (D.Md. 1972), observed:

> a settlement agreement enjoys great favor with the courts; consequently, it is only in the most extraordinary circumstances that such a pact will be vacated, for the general principle is that "a settlement agreement . . .

voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the Court." Cummins Diesel Michigan, Inc. v. The Falcon, 305 F.2d 721 (7th Cir. 1962).

Similarly, the District of Columbia Circuit in Autera v. Robinson, 419 F.2d 1197

(D.C.Cir. 1969), opined:

> Voluntary settlement of civil controversies is in high judicial favor . . . . When the effort is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial and the preparation and proceedings that must forerun it. By the same token, there is everything to be gained by encouraging methodology that facilitates compromise.

Id. at 1199. *See also* Brown v. Brown, 343 A.2d 59 (D.C.1975)(the law favors the

settlement of controversies).

Moreover, a federal court has the inherent power to enforce settlement

agreements.  Petty v. Timken, 849 F.2d 130, 132 (4th Cir. 1988)("The Court has the

authority to summarily enforce the terms of a settlement agreement."); Brock v.

Scheuner Corp., 841 F.2d 151 (1988); Wood v. Virginia Hauling Co., 528 F.2d 423, 425

(4th Cir. 1975) and Met Laboratories, Inc. v. Reich, 875 F. Supp 304, 306 (D.Md. 1995).

Under Maryland law,

> as long as the basic requirements to form a contract are present, there is no reason to treat such a settlement agreement differently than other contracts, which are binding.  This is consistent with the public policy dictating that courts should 'look with favor upon the compromise or settlement of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony.'

Clark v. Elza, 286 Md. 208, 219 (1979), *citing* Chertkof v. Harry C. Weiskittel Co., 251

Md. 544 (1968), *cert. denied* 394 U.S. 974 (1969).

It is hornbook law that a contract will be found to exist if three elements are met. Specifically, there must be an offer, an acceptance and a meeting of the minds, or mutual assent, by the parties. *See* <u>Benjamin v. Erk</u>, 138 Md. App. 459, 469 (2001). This Court must find that the parties have reached a binding and enforceable settlement agreement because all of the elements of a contract are present, as confirmed by the acceptance of the settlement in Magistrate Judge Bredar's chambers. *See* Exhibit 2. Specifically there was an offer, acceptance, and meeting of the minds as to the terms of the settlement. All necessary terms and conditions were agreed to and a settlement was reached. The agreement is not ambiguous or unclear and there was no undue influence or fraud involved in the process. The parties have reached a settlement and that settlement must now be enforced.

## IV.    CONCLUSION

WHEREFORE, TIG Premier Insurance Company, for the reasons set forth herein, respectfully requests that its Motion be granted and that this Honorable Court enter an order enforcing the settlement and ordering the Defendants to immediately pay the agreed upon settlement amount.

/s/ Michael A. Stover
John V. Church (Fed. No. 05007)
Michael A. Stover (Fed. No. 10497)
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8700

Attorneys for Plaintiff, TIG Premier
Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July, 2004, a copy of the foregoing
Memorandum of Law in Support of the Motion to Enforce Settlement was filed
electronically and mailed first class, postage prepaid to William S. Heyman, Esquire,
Tydings & Rosenberg, LLP, 100 East Pratt Street, 26th Floor, Baltimore, Maryland 21202
and Vincent F. Vaccarella, Esquire, Elder, Kurzman & Vaccarella, Courvoisier Center 11,
Suite 401, 601 Brickell Key Drive, Miami, Florida 33131.

/s/Michael A. Stover
Michael A. Stover

*1564438*